FANNIE NAPLES TRADING AS NAPLES EXCAVATING COMPANY, PLAINTIFF-APPELLANT, v. HARRY McCANN, DEFENDANT, AND POIRIER & McLANE CORPORATION, A NEW YORK CORPORATION, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 2, 1953—Decided February 27, 1953.

Before Judges EASTWOOD, BIGELOW and JAYNE.

*Mr. Samuel S. Black* argued the cause for the plaintiff-appellant (*Mr. Seymour R. Black*, on the brief).

*Mr. George G. Tennant, Jr.*. argued the cause for the defendant-respondent.

The opinion of the court was delivered by

EASTWOOD, S. J. A. D.   At the conclusion of the trial of the entire case, the Law Division entered a judgment of involuntary dismissal in favor of the defendant Poirier and McLane Corporation, and against the plaintiff Fannie Naples, trading as Naples Excavating Company (hereinafter referred to as "Naples"), with prejudice and without costs.   A verdict of $5,000 damages was returned by the jury in favor of the plaintiff against the defendant, Harry McCann.   Naples appeals from the judgment of dismissal.

Poirier and McLane Corporation entered into a contract with the New Jersey State Highway Commissioner to build

a section of New Jersey State Highway No. 25, designated as Section 32A. Thereafter, that corporation contracted with Harry McCann for the delivery on the site of construction, of certain sand and fill materials, respectively called "sub base" and "borrow," under the terms of which payment was to be made according to the volume of materials in place in the roadway as calculated by the state highway engineers. McCann, in turn, contracted with Naples for the latter to deliver the sand and fill materials to the site of construction.

In longhand on a copy of McCann's agreement with the McLane Corporation Naples wrote "Our Price Sub base 87½¢ Borrow 60¢," which memorandum was signed by McCann and Naples. The materials were hauled and delivered until about mid-September, when Naples claims that a dispute arose as to the amount of money which she was to receive. This dispute was apparently resolved when Naples was assured that a proper adjustment would be made the following month, whereupon she resumed deliveries.

On or about October 16, 1946 plaintiff suspended deliveries, asserting that she failed to receive the payment due her. The following day Naples contends that she entered into an oral agreement with Poirier and McLane Corporation whereby the latter agreed to pay for all materials which had been delivered to the job and all future deliveries, in consideration of which she immediately resumed deliveries of the building materials and continued to do so until the end of October, when she again discontinued the deliveries of sand because her demands for payment were not met. It is conceded that no stoppage in the delivery of "borrow" or fill material was occasioned, because there was no dispute with respect thereto.

Naples alleges that compensation for the delivery of sand was to be based upon her own calculations; that she had delivered 21,179 cubic yards of the said material and that she was entitled to recover $7,803.25, as the balance due and unpaid for sand deliveries. Subsequently, McCann brought suit against Poirier and McLane Corporation in the Superior Court, Law Division, for the recovery of monies allegedly

due McCann. This suit was settled prior to trial and a stop notice having been filed by Naples with the New Jersey State Highway Commissioner, a check in the amount of $393.78 was forwarded to plaintiff's attorney as her share of the McCann-Poirier Company settlement. This check has been held and unused.

The defendant Poirier and McLane Corporation denied making any oral agreement assuring plaintiff of the payment of all materials furnished at the site as alleged.

The plaintiff argues that the trial court erred in granting defendant's motion for dismissal, on the ground that there was evidence and favorable inferences to be drawn therefrom supporting plaintiff's contentions on the issue of a contract between plaintiff and the corporate defendant and the amount due thereon.

Our review of the record discloses the written contract between Naples and McCann, formulated by endorsement as to terms upon the agreement between McCann and the corporate defendant and that Naples had delivered the building materials and received payment therefor up to the alleged breach of the agreement by McCann's failure to make the proper payments for sand deliveries. Plaintiff's husband, Patsy Naples, testified that upon stoppage of delivery in the building materials two agents of Poirier and McLane Corporation assured him that if he would resume the hauling work the company would see that Naples was paid for all past deliveries as well as future deliveries. Patsy Naples asserted that thereafter hauling operations were resumed under the agreement with the Poirier and McLane Corporation. At the trial defendant conceded that its representatives who allegedly made the agreement with Naples had authority to do so, but insisted that they had made no such agreement.

At one point in his testimony Patsy Naples stated that Naples was to receive payment from Poirier and McLane in accordance with her sand delivery calculations, and at another that payment was to be made in accordance with the calculations of the highway engineers.

Naples testified that he had delivered 21,179 cubic yards of sand on the job prior to the end of October 1946. A state highway engineer testified for the defendant that the aggregate amount of sand delivered on the job by all contractors between July 1946 and July 1, 1947 was 12,547 cubic yards.

No statements were ever submitted to the defendant corporation by Naples for deliveries of sand under the alleged oral agreement between them. Plaintiff accepted payment from McCann for the "borrow" deliveries based upon the state highway engineer's calculations, but contended that payment for sand deliveries was to be made upon a different calculation. There is no proof thereof beyond the oral assertion of Patsy Naples.

The defendant alleges that the testimony of the plaintiff's agent husband is both inconsistent and unbelievable; that the claim of an oral contract with the Poirier and McLane Corporation was uncorroborated; that the alleged promise was not supported by valuable consideration and hence unenforceable; and further, that the judgment of dismissal was justified by reason of the defense of accord and satisfaction of the disputed deliveries when a compromise settlement of McCann's suit against Poirier and McLane Corporation was effectuated and McCann's payment of monies due thereunder to Naples; that Naples is estopped from proceeding with this action because of Naples' admitted testimony that she entered into an agreement with McCann to institute a suit against the McLane Corporation for the amount of Naples' claim and McCann's claim and that the suit was settled for $1,000 and a check given Naples for her share.

It is a rule of general acceptance by our courts that in ruling on a motion for dismissal the trial court must necessarily accept as true all evidence which supports the view of the party against whom the motion is made and must give such party the benefit of all legitimate inferences which are to be drawn therefrom in his favor. *Rapp v. Public Service Coordinated Transport*, 9 *N. J.* 11 (1952); *Cerria v. De Fazio*, 19 *N. J. Super.* 482 (*App. Div.* 1952); *Riley v.*

*Weigand.* 18 *N. J. Super.* 66 (*App. Div.* 1952); *Plak v. General Electric Co.*, 16 *N. J. Super.* 573 (*App. Div.* 1951). As stated in *Ench Equipment Corp. v. Lorenzo*, 23 *N. J. Super.* 63, 71 (*App. Div.* 1952):

"Defendants' motion for judgment at the conclusion of plaintiff's case was made pursuant to *Rules* 3:41–2 and 3:50, as amended. Such a motion necessarily admits the truth of plaintiff's evidence and every inference of fact that may legitimately be drawn therefrom. *Cauco v. Galante*, 6 *N. J.* 128, 132 (1951). If such evidence or inferences of fact will support a verdict for plaintiff, the motion should be denied. *Schumann v. Horn & Hardart Baking Co.*, 8 *N. J. Super.* 153, 158 (*App. Div.* 1950)."

The question on appeal in the case of *Gindin v. Baron*, 11 *N. J. Super.* 215 (*App. Div.* 1951), was similar to that presented in the matter *sub judice*. In that case, it was stated, at *page* 218:

"It is, of course, elementary that in passing upon a motion to direct a verdict and its present equivalent, just as in passing upon a motion for a nonsuit or for an involuntary dismissal, the evidence will not be weighed. The party against whom the motion is made is entitled to have all the evidence in his favor and all the legitimate inferences to be drawn therefrom treated as true. When fair-minded men may honestly differ as to the conclusion to be reached from that evidence, controverted or uncontroverted, the case must be submitted to the jury. *Dobrow v. Hertz*, 125 *N. J. L.* 347 (*E. & A.* 1940)."

This principle was followed by our Supreme Court in the case of *Fischetto Paper Mill Supply, Inc., v. Quigley Co., Inc.*, 3 *N. J.* 149, 154 (1949). *Vide Cirulli v. Licata*, 10 *N. J. Super.* 449, 454 (*App. Div.* 1950); *Reti v. Vaniska, Inc.*, 14 *N. J. Super.* 94 (*App. Div.* 1951); certification denied 8 *N. J.* 39 (1951); *De Ponte v. Mutual Contracting Co.*, 18 *N. J. Super.* 142, 146 (*App. Div.* 1952).

■■ The defendant contends that assuming McCann was delinquent in his payments to plaintiff at the time of alleged cessation of deliveries, its agreement to pay Naples for past deliveries as well as future deliveries was invalid, being without consideration. But such factor is not controlling. We

are aware of no rule that would prevent the formation of a new agreement between Naples and Poirier and McLane Corporation. Poirier and McLane Corporation had contracted with the New Jersey State Highway Commissioner to complete construction and was obligated so to do. Naples testified that an agreement had been made with Poirier and McLane Corporation, and the latter denied any such agreement. The result was a factual issue which should have been resolved by the jury as a trier of facts.

Our examination of the record in the matter reveals evidence and inferences legitimately deducible therefrom which quite conceivably may have caused fair-minded men to differ in their conclusions as to whether the claimed agreement was actually entered into and, if so, the amount, if anything, that was due Naples thereunder; therefore, we are of the opinion that Naples' action against the defendant Poirier and McLane Corporation should have been submitted to the jury for its determination.

We find no merit in the other grounds advanced by defendant in support of the judgment of dismissal.

The judgment is reversed to the end that a trial *de novo* may be had. Costs to abide the event.